UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| GLADE M.,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of the Social Security Administration,<br><br>　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS**<br><br>Case No. 2:23-cv-00324<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Glade M.[1] brought this action for judicial review of the denial of his application for supplemental security income by the Commissioner of the Social Security Administration.[2]   The Administrative Law Judge ("ALJ") who addressed Mr. M.'s application determined he did not qualify as disabled.[3]  Mr. M. argues the ALJ erred in his evaluation of Mr. M.'s substance use disorder.[4]  Because the ALJ applied the correct legal standards and his findings are supported by substantial evidence, the Commissioner's decision is affirmed.[5]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in court orders in certain cases, including social security cases, the court refers to Plaintiff by his first name and last initial only.

[2] (*See* Compl., Doc. No. 5); *see also* 42 U.S.C. §§ 1381–1385.

[3] (Certified Tr. of Admin. R. ("Tr.") 26–44, Doc. No. 10.)

[4] (*See* Opening Br. 2–3, Doc. No. 13.)

[5] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Doc. No. 9.)

**STANDARD OF REVIEW**

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of the Commissioner's final decision.  This court reviews the ALJ's decision to determine whether substantial evidence supports his factual findings and whether he applied the correct legal standards.[6]  "[F]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."[7]

An ALJ's factual findings are "conclusive if supported by substantial evidence."[8] Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla."[9]  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10]  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."[11]  And the court may not reweigh the evidence or substitute its judgment for that of the ALJ.[12]

---

[6] *See* 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[7] *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (internal quotation marks omitted).

[9] *Id.* at 103 (citation omitted).

[10] *Id.* (citation omitted).

[11] *Lax*, 489 F.3d at 1084 (citation omitted).

[12] *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

## APPLICABLE LAW

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which is expected to result in death or last for at least twelve consecutive months.[13]  An individual is considered disabled only if his impairments are so severe, he cannot perform his past work or "any other kind of substantial gainful work."[14]

In determining whether a claimant qualifies as disabled, the ALJ uses a five-step sequential evaluation, considering whether:

1) the claimant is engaged in substantial gainful activity;

2) he has a severe medically determinable physical or mental impairment;

3) the impairment is equivalent to an impairment precluding substantial gainful activity (listed in the appendix of the relevant disability regulation);

4) he has the residual functional capacity to perform past relevant work; and

5) he has the residual functional capacity to perform other work, considering his age, education, and work experience.[15]

---

[13] 42 U.S.C. § 1382c(a)(3)(A).

[14] *Id.* § 1382c(a)(3)(B).

[15] *See* 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).

In the first four steps, the claimant has the burden of establishing disability.[16]  At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work in the national economy.[17]

## PROCEDURAL HISTORY

Mr. M. applied for supplemental security income ("SSI") under Title XVI of the Social Security Act[18] on February 26, 2021.[19]  He alleges he became disabled on January 1, 2018.[20]  After a hearing on August 5, 2022,[21] the ALJ issued a decision on September 9, 2022, finding Mr. M. not disabled.[22]

Because SSI benefits are unavailable before the date of the application,[23] the ALJ focused his analysis on the period beginning February 26, 2021.[24]  The ALJ stated any discussion of evidence before that period was limited to placing Mr. M.'s symptoms and limitations in context or determining the consistency of Mr. M.'s allegations with the medical evidence.[25]  At step two of the sequential evaluation, the ALJ found Mr. M. had

---

[16] *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).

[17] *Id.*

[18] 42 U.S.C. §§ 1381–1385.

[19] (*See* Tr. 26.)

[20] (*See id.*)

[21] (*See* Tr. 50–87.)

[22] (Tr. 26–44.)

[23] *See* 20 C.F.R. § 416.335.

[24] (Tr. 26.)

[25] (*Id.*)

the severe impairments of bipolar disorder, posttraumatic stress disorder, mood disorder, alcohol abuse disorder, neurocognitive disorder, chronic liver disease, degenerative cervical disc disease, facet arthropathy in the lumbar spine, traumatic arthritis bilateral shoulders, and severe obstructive sleep apnea.[26]

At step three, the ALJ first found Mr. M.'s impairments met an impairment listing when including substance use.[27]  The ALJ then considered whether substance use was a contributing factor material to the disability determination.[28]  The ALJ found that if Mr. M. stopped substance use, his remaining impairments would not meet or medically equal an impairment listing at step three.[29]  The ALJ also determined that if Mr. M. stopped using substances, he would have residual functional capacity ("RFC")[30] to perform light work with certain limitations.[31]  At step four, the ALJ found Mr. M. had no past relevant work.[32]  But at step five, considering the testimony of a vocational expert, the ALJ found Mr. M. would be capable of performing other work in the national

---

[26] (Tr. 29.)

[27] (Tr. 29–32.)

[28] (*See* Tr. 32–44); *see also* 20 C.F.R. § 416.935.

[29] (Tr. 32–34.)

[30] A claimant's RFC is the most he can do in a work setting considering his limitations. *See* 20 C.F.R. § 416.945(a)(1); *see also* SSR 96-8p, 1996 SSR LEXIS 5, at *1–2 (July 2, 1996).  The ALJ considers all relevant medical and other evidence in the record.  *See* 20 C.F.R. § 416.945(a)(3).

[31] (Tr. 35.)

[32] (Tr. 43.)

economy if he stopped using substances.[33]  Consequently, the ALJ found Mr. M. was
not disabled because his substance use materially contributed to the disability
determination.[34]

The Appeals Council denied Mr. M.'s request for review,[35] making the ALJ's
decision final for purposes of judicial review.

## ANALYSIS

Mr. M. contends the ALJ erred in his evaluation of Mr. M.'s substance use for
several reasons.  First, Mr. M. argues the ALJ erred by failing to reference Social
Security Ruling ("SSR") 13-2p[36] or apply its six-step analysis for evaluating substance
use disorders.[37]  Second, Mr. M. argues the ALJ failed to adequately support his
findings regarding Mr. M.'s limitations with and without substance use under the
"paragraph B" criteria at step three.[38]  Third, Mr. M. argues the ALJ erred by failing to
properly consider test results from a psychological consultative examination.[39]  Each
argument is addressed in turn.

---

[33] (*Id.*)

[34] (Tr. 44.)

[35] (Tr. 1–3.)

[36] SSR 13-2p, 2013 SSR LEXIS 2, 2013 WL 621536 (Feb. 20, 2013).

[37] (*See* Opening Br. 2, 5, 7–8, Doc. No. 13.)

[38] (*See id.* at 2, 8–14.)

[39] (*Id.* at 14–19.)

A. *The ALJ Applied the Correct Legal Framework in Evaluating Mr. M.'s Substance Use*

The Social Security Act provides a claimant "shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."[40]  Thus, if an ALJ finds a claimant disabled when using substances, the ALJ must determine "whether [the claimant's] drug addiction or alcoholism is a contributing factor material to the determination of disability."[41]  Agency regulations provide the "key factor" is whether the ALJ would still find the claimant disabled if he stopped using drugs or alcohol.[42]  In making this determination, the ALJ evaluates "which of [the claimant's] current physical and mental limitations . . . would remain if [he] stopped using drugs or alcohol and then determine whether any or all of [his] remaining limitations would be disabling."[43]

In SSR 13-2p,[44] the agency provides additional guidance on how to determine whether substance abuse (referred to in the ruling as "drug addiction and alcoholism" or

---

[40] 42 U.S.C. § 1382c(a)(3)(J).

[41] 20 C.F.R. § 416.935(a).

[42] *Id.* § 416.935(b)(1).

[43] *Id.* § 416.935(b)(2).

[44] SSR 13-2p, 2013 SSR LEXIS 2.

"DAA"[45]) is material.  SSR 13-2p describes a six-step evaluation process, set out in a

flowchart as follows:[46]

| 1. Does the claimant have DAA? | a. No—No DAA materiality determination necessary.<br>b. Yes—Go to step 2. |
| 2. Is the claimant disabled considering all impairments, including DAA? | a. No—Do not determine DAA materiality.  (Denial.)<br>b. Yes—Go to step 3. |
| 3. Is DAA the only impairment? | a. Yes—DAA material.  (Denial.)<br>b. No—Go to step 4. |
| 4. Is the other impairment(s) disabling by itself while the claimant is dependent upon or abusing drugs or alcohol? | a. No— DAA material.  (Denial.)<br>b. Yes—Go to step 5. |
| 5. Does the DAA cause or affect the claimant's medically determinable impairment(s)? | a. No—DAA not material. (Allowance.)<br>b. Yes, but the other impairment(s) is irreversible or could not improve to the point of nondisability—DAA not material.  (Allowance.)<br>c. Yes, and DAA could be material— Go to step 6. |
| 6. Would the other impairment(s) improve to the point of nondisability in the absence of DAA? | a. Yes—DAA material. (Denial.)<br>b. No—DAA not material. (Allowance.) |

SSR 13-2p also explains that in all materiality determinations, the ALJ must apply the

appropriate sequential evaluation twice—first including substance use, and then "a

_____

[45] *See id.* at *1.  SSR 13-2p acknowledges these terms are "medically outdated," and it defines "DAA" as "Substance Use Disorders; that is, Substance Dependence or Substance Abuse as defined in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM)."  *Id.* at *5–6.  Accordingly, the term "substance use" is used in this order.

[46] SSR 13-2p, 2013 SSR LEXIS 2, at *12.

second time to determine whether the claimant would be disabled if he or she were not using drugs or alcohol."[47]

Mr. M. argues the ALJ erred by failing to cite SSR 13-2p and failing to analyze steps five and six of the materiality evaluation described in it.[48]  However, "[t]here is no requirement that an ALJ articulate, state or cite[] each legal standard which he applies."[49]  Further, SSR 13-2p does not require an ALJ to evaluate all six steps in every case or to make express findings for each step.[50]  Rather, it provides the following guidance for what information an ALJ's decision must contain:

> Adjudicators must provide sufficient information so that a subsequent reviewer considering all of the evidence in the case record can understand the reasons for the following findings whenever [substance use] materiality is an issue:
>
> - The finding that the claimant has [a substance use disorder];
>
> - The finding that the claimant is disabled at step 3 or step 5 of the sequential evaluation process considering all of his or her impairments, including [substance use].
>
> - The finding that the claimant would still be disabled at step 3 or 5 of the sequential evaluation process in the absence of [substance use], or the finding that the claimant would not be disabled at step

---

[47] *Id.* at *10–11; *see also id.* at *14 ("As in all [substance use] materiality determinations, apply the appropriate sequential evaluation process twice.").

[48] (*See* Opening Br. 2, 5, 7–8, 10, Doc. No. 13; Pl.'s Reply Br. ("Reply") 7–9, Doc. No. 24.)

[49] *Kelli Lynne S-S. v. Kijakazi*, No. 20-1207, 2021 U.S. Dist. LEXIS 200809, at *18 (D. Kan. Oct. 19, 2021) (unpublished).

[50] *See* SSR 13-2p, 2013 SSR LEXIS 2, at *12 ("Although the steps are in a logical order from the simplest to the most complex cases, we do not require our adjudicators to follow them in the order we provide.  For example, when [substance use] is the only impairment adjudicators can go directly to step three and deny the claim because [substance use] is material.").

> 2, 4, or 5 of the sequential evaluation process in the absence of [substance use].[51]

This is precisely the analysis the ALJ performed in this case.  The ALJ found Mr. M. had a substance use disorder (alcohol use disorder), along with other mental and physical impairments.[52]  Consistent with the framework laid out in 20 C.F.R. § 416.935 and SSR 13-2p, the ALJ then applied the five-step sequential evaluation twice—first including substance use,[53] and a second time in the absence of substance use.[54] When considering Mr. M.'s substance use, the ALJ found Mr. M.'s impairments met the requirements of a listed impairment (at step three of the sequential evaluation)— meaning Mr. M. was disabled.[55]  But in the absence of substance use, the ALJ found Mr. M.'s other impairments did not meet the requirements of a listed impairment (step three of the sequential evaluation), and found Mr. M. had the residual functional capacity to perform other jobs in the national economy (step five of the sequential evaluation).[56]  In other words, the ALJ found Mr. M.'s other impairments not disabling in

---

[51] SSR 13-2p, 2013 SSR LEXIS 2, at *41–42.

[52] (Tr. 29.)

[53] (Tr. 29–32.)

[54] (Tr. 32–43.)

[55] (Tr. 29–32.)

[56] (Tr. 32–43.)

the absence of substance use.[57]  Consistent with agency regulations and SSR 13-2p,

the ALJ found Mr. M.'s substance use material and denied his claim.[58]

In sum, although the ALJ did not specifically cite SSR 13-2p, he applied the

proper legal framework for evaluating substance use described in SSR 13-2p and

agency regulations.

### B.   The ALJ's Factual Findings Regarding Mr. M.'s Limitations With and Without Substance Use Are Supported by Substantial Evidence

Mr. M. next argues the ALJ's factual findings regarding Mr. M.'s limitations with

and without substance use are unsupported by substantial evidence.[59]  As a result, Mr.

M. contends the ALJ failed to separate the effects of alcohol use from the effects of

co-occurring mental disorders.[60]  Mr. M. specifically challenges the ALJ's findings for

the "paragraph B" criteria at step three of the sequential evaluation.[61]

---

[57] (*See* Tr. 43.)

[58] (Tr. 44); *see also* 20 C.F.R. § 416.935(b)(2) (requiring evaluation of "which of [the claimant's] current physical and mental limitations . . . would remain if [he] stopped using drugs or alcohol and . . . whether any or all of [his] remaining limitations would be disabling"); SSR 13-2p, 2013 SSR LEXIS 2, at *9 ("[Substance use] is material to the determination of disability if the claimant would not meet our definition of disability if he or she were not using drugs or alcohol."); SSR 13-2p, 2013 SSR LEXIS 2, at *20 ("[Substance use] is material if the claimant's other impairment(s) would improve to the point that the claimant would not be disabled in the absence of [substance use].").

[59] (*See* Opening Br. 2, 8–14, Doc. No. 13.)

[60] (*See id.* at 11–14.)

[61] (*See id.* at 2, 8–10, 12.)

At step three, the ALJ analyzed whether Mr. M.'s mental impairments met the criteria for various listed mental disorders.[62]  For each listed mental disorder, among other requirements, a claimant must meet the criteria of "paragraph B" or "paragraph C," which "are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."[63]  To satisfy paragraph B, there must be a finding of "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning:" (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself.[64]

Consistent with the framework above, the ALJ applied this analysis twice—first including alcohol use, then in the absence of alcohol use.  When considering Mr. M.'s alcohol use, the ALJ found Mr. M. had marked limitations in all four areas of mental functioning under paragraph B, and he met the other requirements of listing 12.04.[65]  But in the absence of alcohol use, the ALJ found Mr. M.'s other mental impairments

---

[62] (Tr. 29–34.)  When including Mr. M.'s alcohol use, the ALJ found Mr. M. met the criteria for listing 12.04, which addresses depressive, bipolar, and related disorders. (Tr. 29–32); *see also* 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.04.  In the absence of substance use, the ALJ evaluated listing 12.04 as well as listings 12.02 (neurocognitive disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders).  (Tr. 32–34.)

[63] SSR 96-8p, 1996 SSR LEXIS 5, at *13 (July 2, 1996).

[64] 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.04(B).

[65] (Tr. 31–32.)

caused only mild or moderate limitations in the paragraph B areas—and, therefore, Mr. M. did not meet the criteria of the applicable mental disorder listings.[66]

Mr. M. argues the ALJ's findings regarding the paragraph B criteria are unsupported because the ALJ failed to adequately distinguish between periods of sobriety and periods of alcohol use.[67]  In support of this argument, Mr. M. asserts the ALJ "cited and did not dispute" Mr. M.'s testimony that he had not been drinking regularly since February 2021.[68]  Mr. M. then claims the ALJ "cite[d] evidence that was recorded during episodes of binge drinking as well as during a later period of relative sobriety seemingly at random to support both the 'marked' set of 'B' criteria findings and the 'mild-moderate' B criteria findings."[69]

Mr. M.'s argument is not borne out by the record.  As an initial matter, although the ALJ acknowledged Mr. M.'s testimony that he had not been drinking regularly since February 2021,[70]  it is not apparent the ALJ fully credited this statement. The ALJ also discussed medical records showing Mr. M. was hospitalized at least twice for alcohol

---

[66] (Tr. 32–34.)  The ALJ also found Mr. M. did not meet the paragraph C criteria.  (Tr. 34.)  Mr. M. does not challenge this finding.

[67] (*See* Opening Br. 8–10, Doc. No. 13; Reply 2, Doc. No. 24.)

[68] (Opening Br. 8, Doc. No. 13.)

[69] (*Id.* at 8–9.)

[70] (Tr. 35.)

use after February 2021[71] and noted that Mr. M. admitted to "ongoing, intermittent binge drinking" during a medical appointment in October 2021.[72]

The ALJ adequately explained which medical records he relied upon to assess Mr. M.'s limitations with and without alcohol use.  In evaluating Mr. M.'s limitations with alcohol use, the ALJ primarily cited intake records from Mr. M.'s hospital admissions for alcohol intoxication or withdrawal.[73]  But in assessing Mr. M.'s limitations without alcohol use, the ALJ primarily cited discharge records—after Mr. M. had received treatment for intoxication or withdrawal—as well as records from periods of reported sobriety.[74]  The ALJ expressly stated this in the portion of his decision addressing Mr. M.'s limitations without alcohol use:

- "A note from August 8, 2021, *which was during his discharge for alcohol intoxication*, indicated that the claimant had the ability to communicate and

---

[71] (Tr. 30 (citing Tr. 595 (August 2021 hospitalization); Tr. 1119, 1225 (September 2021 hospitalizations)).)

[72] (*Id.* (citing Tr. 1575).)

[73] (*See* Tr. 31–32 (citing records from hospital admissions in February 2020 (Tr. 523, 546), February 2021 (Tr. 306, 309), August 2021 (Tr. 597, 610), and September 2021 (Tr. 1119–20) in discussing paragraph B criteria).)

[74] (*See* Tr. 33–34 (citing progress note and discharge note from August 2021 hospitalization (Tr. 636, 666), and clinic records in October 2021 (Tr. 1576), January 2022 (Tr. 1570), and February 2022 (Tr. 1673)—when Mr. M. reported decreased alcohol use—in discussing paragraph B criteria).)

understand instructions, process information about an illness, and

comprehend and recall direction independently."[75]

- "He was cooperative during other followup exams *during periods of reported sobriety*."[76]

- "The claimant was cooperative and calm *following treatment for alcohol use/withdrawal*."[77]

Thus, the ALJ's citations to the medical record were not "random," as Mr. M. claims.

The ALJ reasonably relied on hospital discharge records and records from periods of

reported sobriety in assessing Mr. M.'s limitations in the absence of alcohol use.

In his reply brief, Mr. M. argues records from "short periods of possible

abstinence" provide insufficient evidence of Mr. M.'s limitations without alcohol use.[78]

Mr. M. relies on *Trivino v. Colvin*,[79] in which a district court found an ALJ's materiality

determination unsupported because the ALJ relied on "improperly construed periods of

abstinence."[80]  The court found the ALJ erred in assuming, "with no evidentiary

support," that certain medical encounters occurred during periods of abstinence—

---

[75] (Tr. 33 (emphasis added) (citing Tr. 666).)  The date of the cited discharge note was actually August 9, 2021, not August 8.  (*See* Tr. 666.)  This minor discrepancy is inconsequential.

[76] (Tr. 33 (emphasis added) (citing Tr. 1570, 1673).)

[77] (*Id.* (emphasis added) (citing Tr. 636).)

[78] (Reply 3, Doc. No. 24 (internal quotation marks omitted).)

[79] No. 15-102, 2016 U.S. Dist. LEXIS 140349 (D.N.M. Sep. 29, 2016) (unpublished).

[80] *Id.* at *16–18.

despite finding the claimant engaged in near-daily alcohol use.[81]  But here, the ALJ relied on records from hospital discharges—after Mr. M. had been treated for alcohol withdrawal—and follow-up visits where Mr. M. reported he had not used alcohol recently.  Thus, unlike *Trivino*, the records themselves indicate Mr. M. was not intoxicated during these encounters.  The ALJ reasonably relied on these records in evaluating Mr. M.'s limitations in the absence of alcohol use.[82]

Overall, the medical records the ALJ cited support his conclusion that Mr. M. had marked limitations while using alcohol, but only mild or moderate limitations in the absence of alcohol use.  For example, the ALJ noted that records from Mr. M.'s admissions for alcohol intoxication described Mr. M. as sedated and slow to respond,[83] confused and having difficulty articulating exact dates and times,[84] and appearing disheveled and unkempt.[85]  By contrast, the ALJ noted that records following treatment for alcohol use/withdrawal and from periods of reported sobriety described Mr. M. as cooperative and calm,[86] and discharge notes indicated Mr. M. "had the ability to communicate and understand instructions, process information about an illness, and

---

[81] *Id.* at *17.

[82] *See* SSR 13-2p, 2013 SSR LEXIS 2, at *34 ("In all cases in which we must consider periods of abstinence, the claimant should be abstinent long enough to allow the acute effects of drug or alcohol use to abate.").

[83] (Tr. 31 (citing Tr. 306, 1119–20).)

[84] (*Id.* (citing Tr. 597, 610).)

[85] (*Id.* (citing Tr. 1120).)

[86] (Tr. 33 (citing Tr. 636, 1570, 1576, 1673).)

comprehend and recall direction independently."[87]  The ALJ also relied on a psychological consultative examination from May 2022 (discussed in further detail below).[88]  The records cited by the ALJ constitute substantial evidence supporting his findings.

Mr. M. takes issue with the ALJ's reliance on certain records from after February 2021 (when Mr. M. testified he stopped binge drinking) in finding Mr. M. had marked limitations *with* substance use.[89]  Mr. M. suggests that because he was reportedly sober during this time, these records instead support a finding that he had marked limitations *without* alcohol use.[90]  Specifically, Mr. M. points to clinic notes from January 6, 2022, in which Mr. M. reported hypomania symptoms and periods of hyperactivity with rapid speech.[91]  The ALJ cited this treatment record, noting these symptoms, in evaluating Mr. M.'s limitations with alcohol use.[92]  The ALJ then cited the same record in evaluating Mr. M.'s limitations without alcohol use, again noting these symptoms but also noting Mr. M. was cooperative during the visit.[93]  While it is unclear why the ALJ

---

[87] (*Id.* (citing Tr. 666).)

[88] (Tr. 33–34 (citing Tr. 1598–1606).)

[89] (*See* Opening Br. 9, 12, Doc. No. 13.)

[90] (*See id.* at 12.)

[91] (*See* Tr. 1568.)

[92] (Tr. 31–32 (citing Tr. 1568–70).)

[93] (Tr. 33–34 (citing Tr. 1570).)

relied on this record in evaluating limitations both with and without alcohol use,[94] this reliance does not render the ALJ's findings unsupported.  As described above, the ALJ cited numerous other records in finding Mr. M. did not have marked limitations in the absence of alcohol use.  Those records are sufficient to support the ALJ's findings, regardless of his reliance on the January 2022 clinic notes.[95]

In sum, substantial evidence supports the ALJ determination that Mr. M.'s other mental impairments did not meet the paragraph B criteria in the absence of alcohol use.[96]

### C. The ALJ Properly Considered Evidence from the Psychological Consultative Examination

Mr. M. next argues the ALJ failed to properly consider cognitive testing results from a psychological consultative examination performed on May 31, 2022.[97]

---

[94] At the January 6 visit, Mr. M. admitted to "ongoing binge drinking" but reported a decrease in frequency, with no drinking in the prior week.  (Tr. 1568.)  It is unclear whether the reported hypomania symptoms occurred during a period when Mr. M. was binge drinking.

[95] Additionally, Mr. M. cites no authority supporting the proposition that hypomania symptoms are incompatible with a finding of mild or moderate limitations in the paragraph B criteria.  The ALJ acknowledged Mr. M. experienced symptoms of hypomania and hyperactivity even without alcohol use, and still found Mr. M.'s limitations were only mild or moderate.  (*See* Tr. 33.)  Mr. M. has demonstrated no error in this finding, which is supported by other evidence in the record as discussed above.

[96] *See* SSR 13-2p, 2013 SSR LEXIS 2, at *26 ("To support a finding that [substance use] is material, we must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of [substance use].").

[97] (*See* Opening Br. 14–19, Doc. No. 13; Tr. 1599–1605.)

The consultative examiner administered tests including the Wechsler Adult Intelligence Scale, Wechsler Memory Scale, and the Montreal Cognitive Assessment.[98] Mr. M.'s cognitive assessment score was 20/30, which the examiner indicated was "suggestive of possible cognitive problems."[99]  On the other tests, the examiner indicated Mr. M. displayed "questionable" and "inconsistent" behaviors and failed certain measures of effort, suggesting "he may have put forth suboptimal effort during testing."[100]  The examiner found, "with the effort put forth," Mr. M. had results in the borderline and impaired range for certain abilities.[101]  But the examiner cautioned that the results "would need to be confirmed with records given the inconsistency in some of [Mr. M.'s] behaviors."[102]

The ALJ cited this examination throughout his decision and discussed it in detail in several portions of his analysis.[103]  The ALJ relied on the examination report in finding Mr. M. had only mild and moderate limitations in the paragraph B criteria without alcohol use[104] and in assessing Mr. M.'s RFC without alcohol use.[105]  Acknowledging

---

[98] (*See* Tr. 1602–04.)

[99] (Tr. 1602.)

[100] (Tr. 1603–04.)

[101] (Tr. 1604.)

[102] (Tr. 1605.)

[103] (*See* Tr. 29, 31–34, 37–38, 40–42.)

[104] (*See* Tr. 33–34.)

[105] (*See* Tr. 37–38, 40, 42.)

Mr. M.'s testing results while also noting his "possible suboptimal effort on testing,"[106] the ALJ concluded:

> [C]onsidering the claimant's psychological consultative examination report, including the possible issues with effort and consistency, along with the otherwise lack of exacerbations of mental symptoms during periods of sobriety, I find that the claimant is able to perform simple job instructions, he can perform work which does not have high, fixed production quotas, and he can interact with other individuals on an occasional basis. He can perform work which does not have frequent changes in how the work is being performed.[107]

Mr. M. argues the ALJ erred by failing to evaluate the test results from the examination under the standard applicable to medical opinion evidence.[108] Specifically, Mr. M. argues the ALJ erred by failing to evaluate its consistency with other evidence in the record.[109] Because the test results are not medical opinion evidence as defined in agency regulations, Mr. M.'s argument fails.

An ALJ is required to assess the persuasiveness of medical opinion evidence, explaining his consideration of the supportability and consistency of medical opinions.[110] However, agency regulations define "medical opinion" narrowly as "a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related

---

[106] (Tr. 33.)

[107] (Tr. 40.)

[108] (Opening Br. 14–18, Doc. No. 13.)

[109] (*Id.* at 18.)

[110] 20 C.F.R. § 416.920c(b)(2), (c).

limitations or restrictions" in certain enumerated work-related abilities.[111]   The
regulations differentiate "medical opinions" from "objective medical evidence," which is
defined as "medical signs, laboratory findings, or both."[112]

Under this framework, the test results from the psychological consultative
examination are objective medical evidence, not medical opinions.  Therefore, the ALJ
was not required to assess the persuasiveness of the test results nor discuss
supportability and consistency.  It is apparent the ALJ duly considered the test results,
and Mr. M. has demonstrated no error in the ALJ's treatment of them.

Additionally, the ALJ *did* consider other portions of the examination report under
the framework applicable to medical opinion evidence.  Specifically, the ALJ considered
the examiner's opinion that "if the claimant's testing was accurate, then he would have
difficulty completing tasks at a rapid pace, maintaining attention, working in a cognitively
demanding environment, and learning and retain information."[113]   The ALJ found this
opinion "somewhat persuasive," and explained how he considered the supportability
and consistency factors as required.[114]  First, the ALJ found the test results supported
"limiting the claimant's ability to perform tasks at a rapid pace and finding limitations for
attention and cognition."[115]  The ALJ then noted "[t]here were few prior mental status

---

[111] *Id.* § 416.913(a)(2).

[112] *Id.* § 416.913(a)(1).

[113] (Tr. 42.)

[114] (*Id.*)

[115] (*Id.*)

exams available to evaluate the consistency of these findings, but [the examiner] appears to rely, in part, [on] the claimant's periods of mania, which is consistent with other exam findings."[116]  But the ALJ found the persuasiveness of the examiner's opinions limited because the examiner did not "provide specific functional limitations or otherwise indicate how these limitations correspond to functional limitations in the workplace."[117]  In sum, the ALJ considered the portions of the examiner's report containing medical opinions under the proper framework, including assessing supportability and consistency.

Finally, Mr. M. argues the ALJ erred by "rejecting" the examiner's opinions and test results and assessing Mr. M.'s mental RFC without relying on other medical opinions.[118]  Mr. M. argues that because no other medical opinions dealt with Mr. M.'s mental functional limitations, the ALJ "created an RFC out of whole cloth based on this own lay opinion as to the claimant's limitations."[119]  But this argument mischaracterizes the ALJ's treatment of the examination report.  As explained above, the ALJ found the examiner's opinions partially persuasive and relied on those opinions and the test results in determining the RFC.[120]  Indeed, the ALJ expressly cited the examination

---

[116] (*Id.*)

[117] (*Id.*)

[118] (Opening Br. 19, Doc. No. 13.)

[119] (*Id.*)

[120] (Tr. 40, 42.)

report when including certain limitations in Mr. M.'s mental RFC.[121]  Mr. M. does not explain how the assessed RFC is inconsistent with the examination report.

Further, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."[122]  "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."[123]  This is because "[t]he determination of RFC is an administrative assessment, based upon all the evidence of how the claimant's impairments and related symptoms affect [his] ability to perform work-related activities."[124]  Here, the ALJ properly considered the examination report and other evidence in the record in determining Mr. M.'s RFC.  Mr. M. has demonstrated no error in the ALJ's assessment.

## CONCLUSION

Because the ALJ applied the correct legal standards and his findings are supported by substantial evidence, the Commissioner's decision is affirmed.

DATED this 14th day of August, 2024.

BY THE COURT:

_Daphne A. Oberg_

Daphne A. Oberg
United States Magistrate Judge

---

[121] (Tr. 40.)

[122] *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).

[123] *Id.* (alteration in original) (citation omitted).

[124] *Young v. Barnhart*, 146 F. App'x 952, 955 (10th Cir. 2005) (unpublished).